

# IN THE
# TENTH COURT OF APPEALS

_____

## No. 10-14-00352-CV

## IN THE INTEREST OF R.A., A CHILD

_____

**From the 85th District Court
Brazos County, Texas
Trial Court No. 13-000921-CV-85**

## MEMORANDUM OPINION

Lathomas Grays appeals from a judgment that named Maria Lopez, a non-parent, sole managing conservator of his child, R.A. and dismissed the Department of Family and Protective Services as the child's managing conservator.  Grays complains that the trial court erred by granting conservatorship to Lopez because she had no affirmative pleadings on file and that the trial court erred by refusing to name him the managing conservator of R.A. because the evidence presented did not overcome the parental presumption.  Because we find no reversible error, we affirm the judgment of the trial court.

The Department became the managing conservator of R.A. and his four siblings after R.A. was severely burned and his mother and boyfriend failed to seek medical treatment for almost a day. R.A. and his four siblings were placed with Lopez, the children's maternal great-aunt, during the investigation by the Department. Grays and another man were listed in the Department's original petition filed in April of 2013 as alleged fathers of R.A. Grays was served in April of 2013 and submitted to a paternity test in August. The paternity test established that Grays is R.A.'s father and the results were filed with the court and made known to Grays in September 2013.

Grays did not visit with R.A. or begin completing his service plan until January of 2014. The statutory dismissal deadline was extended by 180 days to the end of October 2014. Grays complied with his service plan, although his therapist testified that he had not completed therapy. At the final hearing, the Department did not seek termination of the parent-child relationship but asked that Lopez be named R.A.'s sole managing conservator, Grays as a possessory conservator, and that the Department be dismissed. The trial court granted the Department's relief as requested.

*Pleadings*

In his first issue, Grays complains that the trial court erred by naming Lopez the sole managing conservator of R.A. because she had no affirmative pleadings on file and did not present any evidence. Grays contends that it was Lopez's burden to prove that she should be named the managing conservator and that the Department's pleadings

and evidence were insufficient to award Lopez the relief that she requested. Grays does not argue that the Department's pleadings were ineffective or that he did not have notice that the Department was attempting to have the trial court name Lopez the sole managing conservator of R.A. Rather, he contends that because the Department did not represent Lopez in the proceedings and Lopez presented no evidence on her own behalf, Lopez did not meet her burden of proof to be named R.A.'s sole managing conservator.

Section 161.205 of the family code states that in the event termination of the parent-child relationship is not ordered by the trial court in a suit seeking termination, the trial court shall either deny the petition or "render any order in the best interest of the child." TEX. FAM. CODE ANN. § 161.205 (West 2014). And, section 153.002 states that the child's best interest "shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." TEX. FAM. CODE ANN. § 153.002. Further, section 263.3026 authorizes the Department to seek as its permanency plan goal that a relative be named the permanent managing conservator of the child. TEX. FAM. CODE ANN. § 263.3026(a)(3) (West 2014). Additionally, section 263.404 of the family code gives the trial court the authority to name the Department as the managing conservator only if the trial court finds that (1) appointment of a parent would not be in the child's best interest because it would significantly impair the child's physical health or emotional development and (2) that it

would not be in the best interest of the child to appoint a relative of the child as managing conservator. TEX. FAM. CODE ANN. § 263.404(a) (West 2014). Section 263.404's language demonstrates that a relative should be appointed as managing conservator before the Department should be so named.

The Department's pleadings asked, in relevant part, that Lopez be named the managing conservator of the children in accordance with the Department's stated permanency plan. Thus, the burden of proof was on the Department, as petitioner, to prove that Grays should not be named the managing conservator and that Lopez should be. The Department did seek to add Lopez as a party prior to the final hearing; however, Lopez did not participate in the final hearing, although it appears from the record that she was present at the final hearing. R.A. had been placed with Lopez by the Department during the pendency of the proceedings and was seeking its permanency goal, which was placement with Lopez.

Grays does not present any authority that in a proceeding involving the Department, the relative or other person with whom the child is placed is required to file pleadings or to present evidence on their own behalf in order for the trial court to name them the managing conservator of the child, and we decline to impose such a requirement. The Department presented evidence that it was not in R.A.'s best interest that Grays be named his managing conservator because it would significantly impair

his physical health or emotional development and evidence that it would be in the best interest of R.A. that Lopez be so named.

We hold that the trial court had statutory authority under the applicable family code provisions, when read as a consistent and logical whole, to find that Grays was not at the time of trial an appropriate managing conservator and also to name Lopez as R.A.'s managing conservator without the necessity of Lopez presenting evidence or otherwise participating in the trial. *See In the Interest of Z.G.*, No. 11-11-00078-CV, 2012 Tex. App. LEXIS 1849 at *9-10 (Tex. App.—Eastland Mar. 8 2012, no pet.) (Trial court had the authority to appoint a paternal cousin as the child's managing conservator without the cousin's intervention because: (1) the trial court's jurisdiction was invoked by the Department's pleadings requesting that the mother's parental rights be terminated and that the children be permanently placed with a relative or other suitable person as the permanent sole managing conservator; (2) the child had been placed with the cousin prior to trial; (3) the cousin was identified in the permanency plan as an appropriate relative caregiver for the child; and (4) it was the Department's recommendation that the child remain with the cousin and that the cousin be appointed as the child's conservator.). We overrule issue one.

*Parental Presumption*

In his second issue, Grays complains that the trial court abused its discretion by naming Lopez the sole managing conservator of R.A. because the evidence was legally

and factually insufficient to rebut the statutory parental presumption. The level of proof necessary to support a trial court's conservatorship decision is far different than the level to terminate a parent's rights to his child. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). Unlike the clear-and-convincing standard used in termination decisions, a court's decision related to conservatorship is governed by a preponderance-of-the-evidence standard, is "subject to review only for abuse of discretion, and may be reversed only if the decision is arbitrary and unreasonable." *Id*. In conservatorship issues, the court's primary consideration always is the child's best interest. TEX. FAM. CODE ANN. § 153.002 (West 2014).

In analyzing the best interest of a child, we use the *Holley* factors as a guide, which include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

When a nonparent seeks sole managing conservatorship against a parent, the Texas Family Code presumes that appointing the parent as the managing conservator is in the child's best interest. TEX. FAM. CODE ANN. § 153.131 (West 2014). However, this presumption may be rebutted by showing that the appointment of the parent as managing conservator would not be in the child's best interest because it would significantly impair the child's physical health or emotional development. *Id*.

As evidence, the Department was required to show specific acts or omissions by Grays that support a logical inference that some specific, identifiable behavior or conduct of his will probably result in harm to the child. *Lewelling v. Lewelling*, 796 S.W.2d 164, 167 (Tex. 1990) (recognizing that statute requires evidence of specific acts or omissions that would result in harm to the child). There must have been direct evidence presented either that placement of R.A. with Grays would significantly impair R.A.'s physical health or emotional development or that allows the factfinder to reasonably reach that conclusion. *In re De La Pena*, 999 S.W.2d 521, 528 (Tex. App.—El Paso 1999, no pet.). The focus is on the effect of the placement, not on the circumstances that produced the placement. *In re R.T.K.*, 324 S.W.3d 896, 902 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

The Department argues that the evidence was sufficient to rebut the parental presumption. Evidence was presented that Grays was the father of three other daughters, ages 18, 17, and 8 at the time of trial, from two different mothers, namely

Carr and Silva, with whom he had been involved in a dating relationship. During his relationships with them, Grays was arrested and convicted of family violence offenses against both Carr and Silva. The altercation with Carr occurred while she was pregnant. Grays and R.A.'s mother were not ever in a dating relationship. Grays had also been involved off and on with another woman, Thomas, for approximately two years prior to the final hearing who also accused him of domestic violence. Allegedly, Thomas had also attempted to run over Grays with a vehicle in anger during the pendency of this case, but he reconciled with her afterward. Grays contended that he and Thomas had broken up approximately one month before the final hearing because his family refused to continue supporting him if he stayed involved with her.

Grays had a criminal history spanning many years which included a conviction for endangering a child in Missouri, drug possession, and distributing and manufacturing drugs. His most recent conviction was in 2009 for the assault against Silva, and a protective order was entered against him for that incident. Silva's affidavit in support of the protective order claimed that Grays had punched and kicked her until she lost consciousness; however, at the final hearing, Silva contended that she had lied in the affidavit and that Grays did not assault her. Grays denied ever physically harming anyone and claimed that he was innocent even though he had pled guilty to the offenses.

Grays alleged that he was not in a relationship at the time of the final hearing. However, the trial court reasonably could have considered that Grays's pattern of engaging in violent personal relationships would continue in the future. *See Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *see also In re J.O.A.*, 283 S.W.3d at 346 (deferring to trial court to weigh evidence of recent improvements, especially of short duration, against probative value of irresponsible choices).

At the time of the final hearing, Grays was employed by his mother, who owned her own business. Grays was residing in his mother's home in Bryan which the Department had determined was appropriate for a child. He did not have primary custody of any of his other children, although his 8 year old daughter visited him often.

Grays found out that the paternity testing established that he was R.A.'s father in August of 2013, but did not start working on his service plan until January of 2014 when he relocated from Houston to Bryan. At that time, the Department's permanency plan already was to permanently place the children with Lopez. Grays attended counseling and his counselor testified that, although he had not completed therapy, he believed that Grays should be awarded managing conservatorship of R.A. However, the therapist acknowledged that Grays had not been entirely forthcoming about his involvement with Thomas up until a month before the final hearing.

R.A. was hospitalized in Galveston due to his injuries that led to the removal from his mother. During the time that R.A. was hospitalized, even after Grays had been determined to be R.A.'s father, Grays did not contact the hospital or attempt to visit R.A. He did begin visits after he moved to Bryan, and at the time of trial, Grays had unsupervised possession of R.A. every Saturday from 9:00 a.m. until 6:00 p.m.

R.A. was placed in Lopez's home with his other four siblings in a three bedroom mobile home in Bryan. Lopez and her 11 year-old son resided in the home as well. Lopez intended to move to a bigger home on her property as soon as the case was resolved. Lopez's mother resided across the street from Lopez and assisted Lopez as needed with the care of the children. Grays testified that if he were named R.A.'s managing conservator, he would allow R.A. to visit with his siblings whenever possible; however, he also testified that he was upset with Lopez and her mother for not doing more to prevent R.A.'s injuries. Grays's home was down the street from Lopez's home.

R.A. had resided with Lopez at one time prior to the removal and from the time he was released from the hospital. R.A. considered Lopez to be his mother and he was very bonded to both Lopez and his siblings. Both the Department's caseworker and the guardian ad litem testified that it would be extremely damaging emotionally to R.A. to remove him from what was close to the only home he had ever known. R.A. had lived with Lopez for all of his life except for about five months. Additionally, the caseworker

and Grays's therapist testified to the physical and emotional damage that can be caused to children from exposure to domestic violence.

Viewing the entire record before the trial court, and being mindful that the trial court was in the best position to observe the demeanor and personalities of the witnesses that cannot be discerned by mere reference to the record, *In re N.A.S.*, 100 S.W.3d 670, 673 (Tex. App.—Dallas 2003, no pet.), we find that the trial court's determination that the parental presumption was rebutted was not outside of the zone of reasonable disagreement. Further we find that the trial court did not abuse its discretion by naming Lopez as R.A.'s sole managing conservator. We overrule issue two.

*Conclusion*

Having found no reversible error, we affirm the judgment of the trial court.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed
Opinion delivered and filed June 11, 2015
[CV06]

