

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-20-00407-CV

_____

IN THE INTEREST OF E.S. AND A.J., CHILDREN

---

On Appeal from the 211th District Court
Denton County, Texas
Trial Court No. 20-0572-211

---

Before Birdwell, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

### I.     Background

This case arises from the trial court's decision to appoint Appellant, Mother, as possessory conservator of her children, E.S. and A.J.[1]  The Texas Department of Family and Protective Services (the Department) received a report that Mother's husband—the children's stepfather—assaulted Mother on December 1, 2019, in front of the children.  Mother suffered multiple injuries.  The children cried after witnessing the assault.  Having obtained a writ of attachment from the trial court, the Department removed the children from the home and sought temporary sole managing conservatorship in the trial court.

At the initial adversary hearing, Mother agreed with the Department's temporary orders and voluntarily signed them.  The temporary orders included a service plan.  Mother understood that her parental rights could be further restricted if she did not comply with the service plan.

On March 6, 2020, the trial court conducted a second adversary hearing regarding M.S., E.S.'s biological father.  Cassandra Kovalkevich, the Department's caseworker, testified that M.S. was willing to take both children.

During the hearing, M.S. discussed a domestic violence report he filed against his wife after she poured gasoline on a vehicle that he was inside of, along with his

---

[1]We refer to the children using aliases and to other family members by their relationship to the children.  *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b)(2).

cousin and his wife's two children. M.S. testified that neither E.S. nor A.J. were present for that event. M.S. explained that he had separated from his wife in 2019. M.S. also stated that he was divorcing his wife but had non-suited the divorce due to COVID-19. M.S. also admitted that he had previously served time in prison for the offenses of burglary and possession of a controlled substance but that he had not been in any trouble since his release in 2015. The court-appointed special advocate (CASA), Rebecca Duncan, stated that M.S.'s home was in great condition and that she had no concerns with his home.

On July 14, 2020, the trial court conducted a third adversary hearing regarding A.J.'s biological father, A.S. A.S. was incarcerated in Oklahoma at the time of the hearing and throughout the pendency of this case. A.S. was properly served and notified of the case involving A.J., and he was informed of the hearing dates in the case. However, A.S. never filed an answer or otherwise made an appearance in this case.

At the same hearing, the trial court conducted an initial permanency hearing. Kovalkevich said that although Mother had been participating in her services, she "still ha[d] a little ways to go" because she was not addressing the reasons why her children were removed. Further, Kovalkevich stated that the Department believed stepfather had assaulted Mother more than once.

Kovalkevich also discussed stepfather's services. She stated that stepfather had initially volunteered to complete a Batterer's Intervention Prevention Program (BIPP)

3

class through Dallas Sigma, but had been discharged due to his behavior. Kovalkevich confirmed, however, that stepfather later enrolled in another BIPP program and completed the class. Kovalkevich explained that stepfather was not allowed any visitation with the children because the children feared him. Kovalkevich also testified that Mother planned to remain with stepfather despite being aware of the children's fear of him.

Mother also testified at the initial permanency hearing. Mother described three relationships she had been in where domestic violence occurred; she agreed that those relationships negatively impacted her children.

At the conclusion of the initial permanency hearing, the trial court approved placement of E.S. and A.J. into M.S.'s home. It also ordered Mother to have weekly visitation with the children.

Before the next permanency hearing occurred, Mother's attorney and Mother filed separate motions with the trial court asking it to allow Mother's attorney to withdraw. At the next permanency hearing on November 10, 2020, the trial court admonished Mother before allowing her attorney to withdraw. It also reiterated that the parties were set for a final trial on November 30, 2020, and that Mother would be "treated like [she was] a licensed attorney." The trial court encouraged Mother to prepare for trial by reviewing evidentiary and procedural rules.

Kovalkevich testified at the second permanency hearing. She stated that the children were doing well in their placement with M.S. and were enrolled in virtual

4

school. She also said that Mother had not demonstrated the behavioral changes that the Department needed to see from her and explained the negative implications of Mother choosing to remain in a relationship with stepfather. Kovalkevich was concerned that Mother could not protect the children.

Additionally, Kovalkevich described the safety issues caused by stepfather during visitations. Kovalkevich informed the trial court that the individuals who had monitored Mother's visits with the children refused to continue doing so because they did not feel safe around stepfather. At the conclusion of the second permanency hearing, the trial court continued the children's placement with E.S.'s biological father, M.S.

On November 16, 2020—fourteen days before the scheduled bench trial—Mother filed a jury trial demand. The Department filed a motion to strike Mother's jury trial demand because it was not timely filed. Mother then filed an "Emergency Motion for Discovery Modification and Trial Continuance" on November 19, 2020. The record does not contain any evidence showing that Mother obtained a ruling on her motion for continuance.

The bench trial proceeded as scheduled on November 30, 2020. Each party announced ready, except for Mother. Mother stated that she filed a jury trial demand and was not ready to proceed with a trial because she "lost her attorney" twenty days before the final trial.

5

The trial court reiterated that it had appointed a duly qualified attorney to represent Mother, but that Mother requested her attorney be allowed to withdraw twenty days before trial. The trial court then granted the Department's motion to strike Mother's jury trial demand and proceeded to opening statements. Mother did not object to the trial court's ruling and fully participated in the bench trial.

Mother, Kovalkevich, the CASA worker, M.S., and the ad litem attorney testified at trial. Mother testified that stepfather assaulted her in December 2019, while the children were present, and that she had suffered numerous injuries as a result of the assault. Mother was also asked about an instance where stepfather choked her until she lost consciousness in front of E.S. Mother testified that E.S. witnessed her ex-boyfriend, D.B., choke her, not stepfather. Lastly, Mother stated that she intended to continue living with stepfather.

Kovalkevich testified that because Mother had not completed her individual counseling, she had not completed all her services. Additionally, Kovalkevich explained that the Department had not seen the behavioral changes it wanted to see from Mother, including acknowledging her history of domestic violence, demonstrating the ability to see red flags, developing healthy relationships, and creating a safe environment for the children.

Finally, Kovalkevich stated that E.S.'s biological father, M.S., had cared for the children's needs and she believed that naming Mother possessory conservator of the children was in the children's best interest. Kovalkevich also believed it was in the

children's best interest to preclude stepfather from having any visitation with either child because the children were terrified of him.

During cross-examination, Mother questioned Kovalkevich about the permanency report that Kovalkevich had filed before the initial permanency hearing. Specifically, Mother asked Kovalkevich why the permanency report did not reflect that she had completed certain classes. Kovalkevich replied that although she did not recall seeing certificates of completion for those classes when she wrote the permanency report, she had ultimately testified at the initial permanency hearing that Mother had completed those classes.

The CASA worker testified that it was in the children's best interest for Mother to be named possessory conservator because she did not believe Mother could provide a safe environment for the children. She discussed in detail the fact that both children feared stepfather and did not want to return to Mother's home if stepfather was a part of the household. The CASA worker, like Kovalkevich, believed that it was in the best interest of the children to keep stepfather away from them.

M.S. testified at trial that he and A.B., the children's maternal grandmother, function "as a family unit" even though they are not blood related and that E.S. and A.J. would see each other often if the trial court placed E.S. with him and A.J. with A.B. M.S. also said that he would help A.B. with A.J. if the trial court placed A.J. with her. Lastly, M.S. described E.S.'s disclosure of an episode of abuse of Mother that he had witnessed. M.S. said that E.S. told him that stepfather "killed their mother

7

because he choked her and she passed out. And they . . . thought she was dead, and then she came back alive. That's . . . exactly what he said, that she came back alive."

The attorney ad litem reported to the trial court that both E.S. and A.J. love Mother very much but neither want to be in a home with stepfather. The ad litem believed it was in the children's best interest to maintain a relationship with Mother but not to live in the same household as stepfather.

At the close of evidence, the trial court appointed M.S. as E.S.'s sole managing conservator and A.B. as A.J.'s sole managing conservator. It appointed Mother as both children's possessory conservator and permanently enjoined Mother from allowing stepfather to be in the children's presence or to transport Mother to and from visits with the children.

## II.    Denial of Jury Trial

In her first issue, Mother claims that the trial court abused its discretion by granting the Department's motion to strike her jury trial demand. Mother waived her right to a jury trial, however, because she did not timely object to the trial court's ruling granting the Department's motion to strike her request for a jury trial. Moreover, Mother's jury trial demand was untimely, and she has not shown how conducting a jury trial would not have interfered with the trial court's docket, delayed the trial, or injured other parties.

## A. Right to Jury Trial

One of our "most precious rights," the right to trial by jury occupies "a sacred place in English and American history." *Gen. Motors Corp. v. Gayle*, 951 S.W.2d 469, 476 (Tex. 1997) (orig. proceeding). The United States and Texas Constitutions guarantee the right to trial by jury. *See* U.S. Const. art. III, § 2; Tex. Const. art. I, § 15. The right to a jury trial may be waived or withdrawn, however, by (a) agreeing to a bench trial, (b) failing to timely pay a jury fee, (c) failing to timely request a jury trial, (d) failing to appear for trial, or (e) failing to object to a bench trial despite a properly perfected request. *See In re Marriage of Harrison*, 557 S.W.3d 99, 135 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (op. on reh'g); *In re W.G.O.*, No. 02-12-00059-CV, 2013 WL 105661, at *2 (Tex. App.—Fort Worth Jan. 10, 2013, pet. denied) (mem. op.).

## B. Mother waived her right to complain that she did not receive a jury trial.

On November 16, 2020, less than a week after consenting to the withdrawal of her court-appointed attorney, and just two weeks before the trial court called the case to trial, Mother filed her demand for a jury trial. All parties, with the sole exception of Mother, announced ready for trial. Mother stated that she wanted a jury trial. The trial court informed Mother that her demand for a jury trial was not timely filed and that the Department had filed a motion to strike it. Mother claimed that because she had "released" her attorney just twenty days before trial, she was unable to file her jury demand outside of the 30-day period. The Department stated that Mother had

known of the trial date for at least six months and chose to request that her attorney be released knowing that the trial date was only twenty days away. M.S. and the ad litem attorney both agreed with the Department and asked the trial court to proceed with a bench trial. The trial court granted the Department's motion to strike Mother's jury trial demand and proceeded to opening statements. Mother never objected to the trial court's failure to hold a jury trial. Accordingly, she waived her right to a jury trial by failing to object when the case was called for trial.[2] *See W.G.O.*, 2013 WL 105661, at *2. As a result, she has waived any right to complain on appeal that the trial court deprived her of her right to a jury trial. *Id.*; *see also Sunwest Reliance Acquisitions Grp., Inc. v. Provident Nat'l Assurance Co.*, 875 S.W.2d 385, 387 (Tex. App.—Dallas 1993, no writ) (holding that if a party waives her right to a jury trial by her own inaction, she also waives her right to complain on appeal that the trial court deprived her of her right to a jury trial).

## C. Even if Mother preserved this issue for review, the trial court did not abuse its discretion in failing to grant Mother's request for a jury trial.

We review the trial court's denial of a jury trial demand for an abuse of discretion. A trial court abuses its discretion if it acts without reference to any guiding rules or principles—that is, if its act is arbitrary or unreasonable. *Low v. Henry*, 221

---

[2]We observe that Mother proceeded pro se during her trial as she does in this appeal. "Litigants who represent themselves must comply with the applicable procedural rules or else they would be given an unfair advantage over litigants represented by counsel." *Addicks v. Sickel*, No. 02-03-00218-CV, 2005 WL 737419, at *2 (Tex. App.—Fort Worth Mar. 31, 2005, pet. denied) (mem. op. on reh'g) (quoting *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 185 (Tex. 1978)).

S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *see also Low*, 221 S.W.3d at 620. A trial court also abuses its discretion by ruling without supporting evidence. *Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 578 (Tex. 2012). But no abuse of discretion occurs when the trial court's decision is based on conflicting evidence, so long as some substantive and probative evidence supports its decision. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009); *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002) (op. on reh'g); *In re M.M.M.*, 307 S.W.3d 846, 849 (Tex. App.—Fort Worth 2010, no pet.).

Under Texas Rule of Civil Procedure 216, entitled "Request and Fee for Jury Trial,"

> [n]o jury trial shall be had in any civil suit, unless a written request for a jury trial is filed with the clerk of the court a reasonable time before the date set for trial of the cause on the non-jury docket, but not less than thirty days in advance.

Tex. R. Civ. P. 216. It is within the discretion of the trial court to deny a jury trial if the party requesting the jury trial does so less than thirty days before trial. *See Huddle v. Huddle*, 696 S.W.2d 895, 895 (Tex. 1985) (op. on reh'g); *Mauldin v. MBNA Am. Bank, N.A.*, No. 02-07-00208-CV, 2008 WL 4779614, at *5 (Tex. App.—Fort Worth Oct. 30, 2008, no pet.) (mem. op.); *Williams v. Williams*, 19 S.W.3d 544, 546 (Tex.

11

App.—Fort Worth 2000, pet. denied).   Notwithstanding an untimely demand, however, a trial court should grant a party's jury demand if it can be done (1) without interfering with the court's docket, (2) delaying the trial, or (3) injuring the opposing party. *See Monroe v. Alternatives in Motion*, 234 S.W.3d 56, 70 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (op. on reh'g); *see also Barkhausen v. Craycom, Inc.*, 178 S.W.3d 413, 418 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (holding that even if party fails to timely pay jury fee, trial courts should accord right to jury trial if it can be done without interfering with court's docket, delaying trial, or injuring opposing party).

The trial court did not abuse its discretion by denying Mother's request for a jury trial in this case.  Mother did not request a jury trial until fourteen days before trial.  Moreover, Mother does not explain how the trial court abused its discretion by proceeding to judgment without a jury trial.  Nor does Mother attempt to show that a jury trial would not have interfered with the trial court's docket, delayed the trial, or injured the opposing party.  Thus, Mother has not shown that the trial court abused its discretion, and we defer to the trial court's decision to proceed without a jury.  We overrule Mother's first issue.

### III.    Denial of a Continuance

In her second issue, Mother argues that the trial court abused its discretion when it denied the motion for continuance she filed after her attorney withdrew from the case.[3]  We disagree.

### A.    Applicable law

As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion, and that the trial court (1) ruled on the request, objection, or motion, either expressly or implicitly; or (2) refused to rule on the request, objection, or motion, and the complaining party objected to the refusal.  Tex. R. App. P. 33.1(a).  Failure to obtain a ruling on a motion for continuance waives any error.  *See McKinney Ave. Props. No. 2, Ltd. v. Branch Bank & Tr. Co.*, 05-14-00206-CV, 2015 WL 3549877, at *5 (Tex. App.—Dallas June 5, 2015, no pet.) (mem. op.); *Washington v. Tyler Indep. Sch. Dist.*, 932 S.W.2d 686, 690 (Tex. App.—Tyler 1996, no writ); *see also Approximately $1,013.00 v. State*, No. 14-10-01255-CV, 2011 WL 5998318, at *2 (Tex. App.—Houston [14th Dist.] Dec. 1, 2011, no pet.) (mem. op.) ("Showing that a motion was

---

[3]Within her second issue, Mother appears to argue that her attorney was ineffective for advising her to waive the adversary hearing that occurred shortly after the children were removed from Mother.  To the extent that she raises an ineffective assistance claim, her claim fails because she cannot show that her counsel's representation fell below an objective standard of reasonableness with a record silent as to the reasons for her counsel's conduct or that any allegedly deficient performance prejudiced her.  *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *In re M.S.*, 115 S.W.3d 534, 545 (Tex. 2003).

filed with the court clerk does not constitute proof that the motion was brought to the trial court's attention or presented to the trial court with a request for a ruling.").

## B. Mother waived her right to raise this issue on appeal.

Mother filed a motion on November 19, 2020, titled, "Emergency Motion for Discovery Modification and Trial Continuance" with an unsworn declaration and memorandum of law attached, but with no proposed order. And the record does not indicate the trial court ever ruled on her motion. Moreover, the clerk's record does not contain an order wherein the trial court denied her motion. Therefore, because there is no evidence that Mother ever presented her motion to the trial court or obtained a ruling on her motion, Mother has waived her complaint that the trial court abused its discretion by failing to grant her motion for continuance.[4] *McKinney Ave. Props.*, 2015 WL 3549877, at *5; *Washington*, 932 S.W.2d at 690.

## C. The trial court did not abuse its discretion by denying Mother's motion for a continuance.

Even if the trial court impliedly denied Mother's continuance motion, the trial court did not abuse its discretion by denying the motion.[5] Whether to grant a continuance is a decision within the trial court's sound discretion, and we will not disturb a trial court's denial of a motion for continuance absent a clear abuse of

---

[4]Moreover, Mother has not included any argument or citation to authority specifically directed to her continuance issue, thereby waiving this complaint. *See In re T.T.F.*, 331 S.W.3d 461, 477–78 (Tex. App.—Fort Worth 2010, no pet.).

[5]The abuse of discretion standard set out in our analysis in response to Mother's first issue applies equally here.

discretion. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002) (citing *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986)). The denial of a motion for continuance based on lack of time to prepare for trial will generally not be found to be an abuse of discretion. *Hatteberg v. Hatteberg*, 933 S.W.2d 522, 527 (Tex. App.—Houston [1st Dist.] 1994, no writ). In addition, a trial court generally does not abuse its discretion when it denies a continuance after counsel withdraws, provided counsel withdraws due to the fault of the party moving for continuance. *Harrison*, 557 S.W.3d at 119; *Van Sickle v. Stroud*, 467 S.W.2d 509, 510–11 (Tex. App.—Fort Worth 1971, no writ).

Mother's continuance motion specifically stated that she "need[ed] more time to review facts, evidence and the law to develop a trial strategy," and that "[t]wenty days is not adequate time for [Mother] to conduct her discovery and investigation, as her own attorney, to prepare for trial." Mother's motion was based on a lack of time to prepare, and appellate courts have repeatedly held that lack of preparation is an insufficient ground to grant a motion for continuance. *See, e.g.*, *Losoya v. Mission Hous. Auth.*, No. 13-15-00599-CV, 2016 WL 8607595, at *2 (Tex. App.—Corpus Christi–Edinburg Dec. 8, 2016, pet. denied) (mem. op.); *Perrotta v. Farmers Ins. Exch.*, 47 S.W.3d 569, 577 (Tex. App.—Houston [1st Dist.] 2001, no pet.); *White v. Hansen*, No. 05-99-00657-CV, 2000 WL 1137285, *2 (Tex. App.—Dallas Aug. 11, 2000, no pet.) (not designated for publication).

15

Additionally, Mother claimed that she was not at fault for her attorney's withdrawal. However, the record belies Mother's assertion. On October 23, 2020, Mother filed a motion titled "Motion to Remove Counsel" asking the trial court to remove her appointed counsel. Consequently, Mother's appointed counsel filed a motion asking to withdraw from the case because Mother had discharged her from the case. Before releasing Mother's attorney, the trial court explained to Mother that her attorney was duly qualified to represent her in her parental rights case and that she would either have to hire another attorney or represent herself if the trial court released her attorney. Mother stated she understood and asked the trial court to allow her attorney to withdraw twenty days before the bench trial.

The record reflects that Mother's continuance motion was based on a lack of time to prepare. Moreover, Mother was at fault for her attorney's withdrawal; her attorney withdrew from her case because Mother wanted to proceed pro se. Thus, the trial court did not abuse its discretion in impliedly denying her continuance. *Harrison*, 557 S.W.3d at 119; *Van Sickle*, 467 S.W.2d at 510–11. We overrule Mother's second issue.

## IV. Appointment of Mother as Possessory Conservator

In her third issue, Mother claims that the trial court abused its discretion when it appointed her as possessory, not managing conservator of the children and permanently enjoined her from allowing stepfather to (1) be in the presence of the children and (2) transport her to or from her visits with the children. We do not agree

16

with Mother because probative and substantive evidence supported the trial court's decision.

## A. Applicable law

In contrast to termination findings, conservatorship determinations made after a bench trial are governed by a preponderance of the evidence standard. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). The appointment of a conservator is subject to review for abuse of discretion and may be reversed only where the decision is arbitrary and unreasonable. *Id.*

A child's best interest is a trial court's primary consideration in determining conservatorship, possession, and access issues. Tex. Fam. Code Ann. § 153.002; *In re V.L.K.*, 24 S.W.3d 338, 342 (Tex. 2000). A trial court is "in the best position to observe the witnesses and their demeanor, and therefore is given great latitude in determining a child's best interests." *In re Guardianship of C.E.M.-K.*, 341 S.W.3d 68, 80 (Tex. App.—San Antonio 2011, pet. denied).

The Supreme Court of Texas has identified factors that courts may consider when determining the best interest of a child, including: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by the individuals or by the agency seeking custody; (7) the stability of the home or proposed

placement; (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). This is not an exhaustive list, and a court need not have evidence on every element listed to make a valid finding as to the child's best interest. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). In addition, the Texas Family Code sets out factors to be considered in evaluating a parent's willingness and ability to provide the child with a safe environment. *See* Tex. Fam. Code Ann. § 263.307(b). While no one factor is controlling, analysis of a single factor may be adequate in a particular factual situation to support a finding that termination is in the best interest of the child. *In re A.P.*, 184 S.W.3d 410, 414 (Tex. App.—Dallas 2006, no pet.).

## B. The trial court did not abuse its discretion by appointing Mother as a possessory conservator because probative and substantive evidence supported the trial court's decision.

Mother claims that the trial court abused its discretion in appointing her as merely a possessory conservator and not a managing conservator of her children because she and stepfather were (1) willing to seek out, accept, and complete counseling services; (2) able to effect positive environmental and personal changes within a reasonable time; (3) provide a safe physical home environment; and (4) protect the children from repeated exposure to violence.[6] *See* Tex. Fam. Code

---

[6]Unless limited by court order, a parent appointed as sole managing conservator of a child has the right and duty to designate the primary residence of the

18

Ann. § 263.307(b)(10)–(12)(D), (E) (setting out factors that indicate a parent's willingness and ability to provide the child with a safe environment). But Mother focuses on only a few of the nonexclusive factors that the trial court could have considered in determining the children's best interest and ignores other "best interest" factors that are relevant to this case. *See id.* § 263.307(b); *In re D.M.*, No. 02-16-00473-CV, 2017 WL 1173847, at *11–12 (Tex. App.—Fort Worth Mar. 30, 2017, no pet.) (mem. op.) (stating appellants' arguments focused on only two nonexclusive factors and ignored other factors the trial court could have considered in determining child's best interest). For example, courts should consider whether a parent can create a safe environment for the child. This includes determining whether the child is fearful of living in or returning to the child's home, and whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home. Tex. Fam. Code Ann. § 263.307(b)(5),(7); *see Holley*, 544 S.W.2d at 371–72.

Here the trial court heard unrefuted testimony regarding the history of domestic violence in the children's home and of the children's fear of stepfather. The trial court learned that on December 1, 2019, stepfather kicked Mother in the ribs, stomped on her, and grabbed her face—all with the children present. Both children cried. Further, Mother admitted that a former boyfriend of hers, D.B., had also assaulted her in front of the children on three occasions during 2016 or 2017. On one

---

child. *See* Tex. Fam. Code Ann. § 153.132(1). A person named as possessory conservator does not have the right to designate the primary residence of the child. *See id.* § 153.192.

occasion, E.S. watched D.B. choke Mother until she passed out. Mother admitted that watching D.B. choke her caused E.S. fear.

Moreover, multiple witnesses testified that the children feared stepfather and did not want to live in a household with him. Kovalkevich stated that both children were "terrified" of stepfather and that she did not believe "retraumatizing them with constantly seeing someone that hurt their mom" was in their best interest. She then explicitly stated that neither child wanted to go back to Mother's home if she was still residing with stepfather. Yet, despite this history of abuse by stepfather and knowledge that the Department was concerned about stepfather being around the children, Kovalkevich testified that Mother intended to stay with stepfather.

The CASA worker, Duncan, stated that A.J. was "clearly very scared of his stepfather. Every time you mention his name, he starts crying, and he has trouble answering questions about him." A.J. told Duncan that he had not personally been mistreated by stepfather, but that he was afraid of stepfather's treatment of Mother. Duncan further testified that E.S. was physically afraid of stepfather and that E.S. had described an incident to her where stepfather "kick[ed]" E.S. and A.J. out of a car and then forced E.S. to drink alcohol.

Duncan echoed Kovalkevich's testimony:

Both boys have told me that they would like to return to their mom and they love their mom very much, but they have been very, very, very clear on multiple occasions that they do not want to return to a home that their stepfather . . . is living in.

20

Duncan did not believe that Mother could provide a safe environment for the children and that naming Mother possessory conservator was in the children's best interest.

The attorney ad litem informed the trial court that while both children loved Mother, they were "very afraid of their stepfather and [did] not want to be in a household with him." The ad litem agreed that appointing Mother possessory conservator was in both children's best interest.

The foregoing testimony constitutes probative and substantive evidence of Mother's history of choosing partners who violently abuse her in the presence of her children. Further, the evidence demonstrates the children's fear of stepfather and their desire not to return home if stepfather continues to live with Mother. In sum, the evidence supports the trial court's conclusion that it is in the children's best interest to appoint Mother as a possessory conservator. *See Holley*, 544 S.W.2d at 371–72 (holding that evidence of domestic violence in the home supports a finding that placement with the parent is likely to subject the child to emotional and physical danger now and in the future); *see also* Tex. Fam. Code Ann. § 263.307(b)(12)(E) (providing that courts may consider whether parent has adequate skills to protect child from repeated exposure to violence although violence may not be directed at the child); *In re J.I.T.P.*, 99 S.W.3d 841, 846 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (stating that exposure to domestic violence, even when child is not intended victim, supports finding that termination is in child's best interest).

Therefore, even considering the best-interest factors that Mother argues weigh in favor of the trial court appointing her sole or joint managing conservator, we cannot say that the trial court abused its discretion by appointing Mother as a possessory conservator or by enjoining Mother from allowing stepfather to be in the presence of the children or to drive her to visits with the children. *See D.M.*, 2017 WL 1173847, at *5 (holding that a history of family violence alone justified the trial court's order naming Department as managing conservator and denying parents' requests to be named managing conservators); *In re H.R.S.*, No. 07-00-0367-CV, 2002 WL 372933, at *2 (Tex. App.—Amarillo Feb. 26, 2002, no pet.) (not designated for publication) (holding that as long as the possessory conservatory decision enjoys support in law and fact, it cannot be considered an abuse of discretion). We overrule Mother's third issue.

## V.     False Testimony

In her fourth issue, Mother claims that the Department filed false reports and testified falsely to "offset Appellant's accomplishments and to hinder and impede immediate family reunification." We do not agree because the record fails to support Mother's claim that the Department presented false testimony or reports at trial.

In cases where a witness willfully testifies falsely regarding a material fact, a new trial may be granted. *In re Marriage of Hutcherson*, No. 12-18-00345-CV, 2019 WL 4727843, at *3–4 (Tex. App.—Tyler Sept. 27, 2019, no pet.) (mem. op.). Mother complains about the permanency report filed on July 2, 2020, and about testimony at

the initial permanency hearing on July 14, 2020. Any allegedly false permanency report or testimony at the initial permanency hearing, however, was not material because the trial court's final order moots any complaints regarding a previous hearing or order. *See In re P.R.*, 994 S.W.2d 411, 417 (Tex. App.—Fort Worth 1999, pet. dism'd w.o.j.), *disapproved of on other grounds*, *In re J.F.C.*, 96 S.W.3d 256, 267 & n.39 (Tex. 2002).

Moreover, even if Mother's complaints were not moot, she has not demonstrated that any false testimony was given. Initially, Mother complains that the Department's permanency report dated July 2, 2020, was false because it failed to reflect that she had completed her family reunification classes. At trial, however, the case worker, Kovalkevich, testified that at the time she wrote the permanency report she did not recall seeing any certificates of completion for the classes that Mother claimed she had completed. And Kovalkevich also pointed out that by the time of the initial permanency hearing she had learned that Mother had completed those classes and she testified to that fact. Accordingly, this testimony was not false.

Next, it appears that Mother is arguing that Kovalkevich gave false testimony when she included the fact that stepfather had been discharged from his court-ordered BIPP class in her permanency report. Mother claims that the Department "falsely stated within the Permanency Report [that] the stepfather was unsuccessfully discharged from Dallas Sigma Counseling Services, the reunification services provider, because of aggressive and rude behavior." At trial, the court heard an extensive

exchange between Mother and Kovalkevich regarding stepfather and his behavior while he was enrolled in the BIPP class with Dallas Sigma. Kovalkevich testified that she had spoken with a counselor at Dallas Sigma and was told that Sigma "released" stepfather from the class due to his "behavior." Kovalkevich's testimony regarding Dallas Sigma's decision to release stepfather from services due to his bad behavior was based on information that she received from a Dallas Sigma counselor and was not false testimony. Moreover, during the bench trial, Kovalkevich testified that stepfather had actually completed a different BIPP class.

Finally, Mother claims that M.S. gave false testimony when he testified that stepfather choked her to the point of unconsciousness in front of her children. However, as M.S. testified, he was simply reiterating what E.S. told him that he saw happen. Moreover, Mother was able to provide her own account of what happened earlier in the bench trial. Mother testified that her ex-boyfriend, D.B. and not stepfather, choked her to the point of unconsciousness in front of E.S. The trial court was not left with the false impression that stepfather was the man who choked Mother in the incident that M.S. described during his testimony. Accordingly, M.S.'s testimony was not false.

Although Mother claims that certain evidence was false, she provides no proof to support her claim. Accordingly, we overrule Mother's fourth issue.

24

## VI.    Appointment of M.S. as E.S.'s Sole Managing Conservator

In her fifth issue, Mother claims that the trial court's decision to appoint M.S. as sole managing conservator of E.S. was arbitrary and unreasonable. We disagree because substantive and probative testimony supported the trial court's decision to appoint M.S. as E.S.'s sole managing conservator.

As set forth in Mother's third issue, we review a trial court's conservatorship determination for an abuse of discretion. *In re R.T.K.*, 324 S.W.3d 896, 899 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (op. on reh'g). And a trial court does not abuse its discretion where substantive or probative evidence supports its decision. *Id.*

A child's best interest is a trial court's primary consideration in determining conservatorship, possession, and access issues. Tex. Fam. Code Ann. § 153.002; *V.L.K.*, 24 S.W.3d at 342. The trial court heard evidence regarding the *Holley* factors that supported its decision to appoint M.S. as E.S.'s sole managing conservator.

At trial, Kovalkevich testified that M.S. had cared for the children's needs during their placement with him and that he also allowed them exposure to their maternal family. Moreover, M.S. testified that he would ensure that E.S. would have continuing contact with his maternal family and frequent contact with A.J. if E.S. was placed with him. M.S. explained that he and E.S.'s maternal grandmother, A.B., "function as a family unit" even though they are not blood related. M.S. also registered E.S. for school and for SoonerCare, the Oklahoma equivalent of Texas

25

Medicaid. Kovalkevich testified at the permanency hearing that E.S. was doing well in virtual school.

Additionally, Kovalkevich testified that M.S. actively cooperated with the Department during E.S.'s placement and that he promptly corrected issues the Department brought to his attention. For example, M.S. let A.B. watch E.S. while he was out of town for work. However, once the Department informed M.S. that E.S. could not stay with A.B. for an extended period, M.S. immediately obtained a new job that did not require him to travel.

Mother, however, argues that it was unreasonable for the trial court to appoint M.S. sole managing conservator of E.S. because he has a criminal history and a history of committing acts of child abuse and domestic violence. Yet, the record contains no credible evidence that M.S. committed any acts of domestic violence or child abuse. As support for her claim, Mother points to an incident in which M.S.'s wife poured gasoline on a vehicle while M.S., M.S.'s cousins, and her own children were in the vehicle. Neither E.S. nor A.J. were present when this occurred. And M.S. has filed for divorce against his wife and has been separated from her since 2019. M.S. only non-suited the divorce proceedings because of COVID-19 issues.

As far as his criminal record is concerned, M.S. did serve time in prison, but was released in 2015. Moreover, Kovalkevich testified that having a criminal record alone is not a sufficient reason to take a child away from a parent.

In sum, the evidence showed that M.S. would provide for E.S.'s emotional and physical needs, had the ability to appropriately care for E.S., and planned for E.S.'s care. *See Holley*, 544 S.W.2d at 371–72. This substantive and probative evidence supports the trial court's conservatorship determination and shows that it did not abuse its discretion in appointing M.S. as E.S.'s sole managing conservator.[7] *R.T.K.*, 324 S.W.3d at 899. We overrule Mother's fifth issue.

## VII. Appointment of A.B. as A.J.'s Sole Managing Conservator

In her sixth issue, Mother claims that the evidence is legally and factually insufficient to support the trial court's decision appointing A.B. as A.J.'s sole managing conservator. Mother's point is inadequately briefed, however, and thus presents nothing for our review. Moreover, even if Mother did adequately brief this issue, we hold that the trial court had sufficient evidence to support the exercise of its discretion in appointing A.B. as A.J.'s sole managing conservator.

## A. Mother waived this issue for our review.

After Mother avers that the evidence is legally and factually insufficient to support the trial court's decision appointing A.B. as A.J.'s sole managing conservator, she discusses the alleged falsity of a CPS report. Mother then argues that stepfather completed his BIPP classes. Finally, Mother concludes her argument by claiming

---

[7]Additionally, as set out in our response to Mother's third issue, the trial court did not abuse its discretion in appointing Mother possessory conservator. The Department produced substantive and probative evidence that demonstrated it was not in the children's best interest for Mother to be named sole or joint managing conservator of the children.

that the trial court's decision appointing A.B. as A.J.'s sole managing conservator should be reversed because it violates Texas's public policy of disregarding false reports. Mother never articulates a standard of review or specifically argues how the evidence is insufficient under any standard of review. Mother has not provided argument or authorities in her brief with respect to her claim, and therefore she has preserved nothing for our review. *See* Tex. R. App. P. 38.1(h); *McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997) (holding that sufficiency point was insufficiently briefed and therefore presents nothing for review); *Hutto v. State*, 977 S.W.2d 855, 858 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (holding where no argument is presented on how the evidence is insufficient, nothing is preserved for review).

## B. The trial court's order appointing A.B. as A.J.'s sole managing conservator was not arbitrary or unreasonable.

Even if Mother had preserved this issue for our review, we conclude that there was sufficient evidence to support the trial court's exercise of its discretion, and it did not err in appointing A.B. as A.J.'s sole managing conservator. As fully set out in issue three, conservatorship determinations made after a bench trial are "subject to review only for abuse of discretion, and may be reversed only if the decision is arbitrary and unreasonable." *J.A.J.*, 243 S.W.3d at 616.

When, as here, an appellant challenges the legal and factual sufficiency of the evidence in a case where the proper standard is abuse of discretion, we apply a hybrid

abuse-of-discretion analysis to determine whether the trial court (1) had sufficient information on which to exercise its discretion, and (2) erred in its application of discretion. *Stamper v. Knox*, 254 S.W.3d 537, 542 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *Gardner v. Gardner*, 229 S.W.3d 747, 751 (Tex. App.—San Antonio 2007, no pet.). Thus, legal and factual insufficiency are not independent grounds for reversal, but instead are factors to be considered in determining whether the trial court abused its discretion. *E.g.*, *Moore v. Moore*, 383 S.W.3d 190, 198 (Tex. App.—Dallas 2012, pet. denied).

To determine if the evidence is legally sufficient, we review the entire record, considering evidence favorable to the finding if a reasonable factfinder could, and disregarding evidence contrary to the finding unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 828 (Tex. 2005). The evidence is factually insufficient if the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). But it is for the factfinder to determine the weight to be given to the testimony and to resolve any conflicts in the evidence. *Sotelo v. Gonzales*, 170 S.W.3d 783, 787 (Tex. App.—El Paso 2005, no pet.).

Finally, after assessing the sufficiency of the evidence, we determine whether, based on the elicited evidence, the trial court made a reasonable decision. *See Zeifman v. Michels*, 212 S.W.3d 582, 587–88 (Tex. App.—Austin 2006, pet. denied); *Sotelo*, 170

29

S.W.3d at 787. "In other words, we must conclude that the ruling was neither arbitrary nor unreasonable." *Sotelo*, 170 S.W.3d at 787.

Here, the trial court had before it sufficient information on which to exercise its discretion including the fact that A.B. and M.S. function "as a family unit" and that the children would be able to see each other often if A.J. was placed with A.B. Additionally, the trial court heard evidence throughout this case that separating the children was not in their best interests and could have reasonably concluded that placing A.J. with A.B. maximized their ability to spend time together. *See C.E.M.-K.*, 341 S.W.3d at 80 (holding that trial court given great latitude to determine child's best interest). Finally, the trial court knew that A.J. was very scared of stepfather and did not want to live with Mother if she continued to reside with stepfather. The trial court did not err in the application of its discretion to this issue. *M.M.M.*, 307 S.W.3d at 849. Accordingly, we overrule Mother's sixth issue.

## VII.  False Testimony – Part II

In her seventh issue, as in her fourth, Mother again argues that M.S. testified falsely when he stated that stepfather choked her until she was unconscious. We rejected this claim when we addressed Mother's fourth issue, and for the same reasons we reject it again now. We overrule Mother's seventh issue.

## VIII.  Removal of the Children

In her last issue, Mother claims that the children should not have been removed from her home because they were not in imminent danger. However,

30

Mother's complaint about the trial court's temporary orders regarding the removal of her children is moot and as such is not subject to appellate review.[8] A temporary order is superseded by the entry of a final order. *See In re Z.R.M.*, No. 04-15-00063-CV, 2015 WL 4116049, at \*5–6 & n.5 (Tex. App.—San Antonio July 8, 2015, no pet.) (mem. op.) (holding that complaints about a child's removal are not proper in context of appeal from final order); *L.F. v. Dep't of Family and Protective Servs.*, No. 01-10-01148-CV, 01-10-01149-CV, 2012 WL 1564547, at \*14 (Tex. App.—Houston [1st Dist.] May 3, 2012, pet. denied) (mem. op.) (holding that issue concerning a child's emergency removal was moot after the trial court rendered its final order). We overrule Mother's last issue.

## IX. Conclusion

Having overruled Mother's issues on appeal, we affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: May 27, 2021

---

[8]A trial court's decision to allow the Department to maintain custody of a child following an adversary hearing is reviewable, if at all, through a petition for writ of mandamus. *See In re Tex. Dep't of Family & Protective Servs.*, 255 S.W.3d 613, 614 (Tex. 2008) (orig. proceeding); *In re Allen*, 359 S.W.3d 284, 288 (Tex. App.—Texarkana 2012, orig. proceeding) (op. on reh'g). There is nothing in the record to indicate that Mother filed a petition for writ of mandamus.