324 S.W.3d 896 (2010)
In the Interest of R.T.K., A Child.
No. 14-08-00948-CV.
Court of Appeals of Texas, Houston (14th Dist.).
November 2, 2010.
*897 Janet M. Heppard, Barbara J. Stalder, Houston, for appellant.
Sallee S. Smyth, Richmond, Sherill Lynn Dean, Carol Griffin, Houston, for appellee.
Panel consists of Justices FROST, BOYCE, and SULLIVAN.

SUBSTITUTE OPINION
KENT C. SULLIVAN, Justice.
We deny appellant's motion for rehearing, withdraw the opinion issued in this case on August 31, 2010, and issue this substitute opinion in its place.
This appeal arises from a child-custody dispute. Appellant, Heidi Blunt, is the biological mother of R.T.K., a 12-year-old boy. She was briefly married to the boy's father, Dean Kelly, but their volatile marriage *898 ended in 1999, before the child's second birthday. Under an agreed conservatorship order, Dean was appointed sole managing conservator of R.T.K. Heidi, by contrast, was named possessory conservator and granted only supervised visitation rights.
Over the next few years, Heidi frequently failed to exercise her visitation rights. In her absence, her son was brought up almost exclusively by Dean and his new wife, appellee Stacie Kelly, whom he married in 2001 when R.T.K. was three years old.
In 2006, Dean suddenly passed away while on a camping trip with Stacie and R.T.K. Following his death, Stacie and Heidi both sought to be named as the boy's managing conservator. After a lengthy bench trial, the court appointed Stacie sole managing conservator but kept Heidi's status as a possessory conservator. In support, the court expressly found that appointment of Heidi as managing conservator, solely or jointly, would significantly impair R.T.K.'s physical health and emotional development.
Heidi has appealed that ruling. In two issues, she contends the trial court abused its discretion, and violated her constitutional rights, by declining to appoint her sole managing conservator. We affirm.

I.

BACKGROUND
The appellate record is not very flattering to Heidi. However, because her appellate issues raise the question of her fitness as a parent, we are compelled to discuss details of her personal and criminal problems over the relevant time period. To the extent she testified to a different version of these events, we are required, under the pertinent standard of review, to consider the evidence in the light most favorable to the trial court's findings of fact. See City of Keller v. Wilson, 168 S.W.3d 802, 822-23 (Tex.2005). The following facts are presented in that fashion.
R.T.K., the child subject to this custody dispute, was born on January 19, 1998. The volatile marriage between his parents, Dean and Heidi, did not last long. They separated only three months after he was born, at a time when Heidi was facing criminal charges because she had assaulted Dean on at least two occasions. Heidi responded to the separation by working as an "escort" to more than eighty different men. Sometime after learning of Heidi's new occupation, Dean filed for divorce on the grounds of cruelty by Heidi.
In October 1999, the trial court granted Dean's request for a divorce and found Heidi had, in fact, engaged in cruel treatment of him. By agreement of the parties, Dean was appointed sole managing conservator of R.T.K., and Heidi was named a possessory conservator. However, Heidi was allowed only supervised visitation with her son, to be overseen by Heidi's grandmother, Jane Bright.
For the next few years, Heidi did not take much of an active role in her son's early life. She frequently failed to exercise her visitation rights and, when she did, she reportedly spent much of that time on the computer, leaving her grandmother to play with R.T.K. At one point, Heidi had not seen her son in more than two years.
Meanwhile, Dean had married Stacie in 2001. R.T.K. continued to live with them and, over the next several years, the boy bonded with Stacie and came to regard her as his "mom."
In 2004, Heidi successfully lobbied the trial court to grant her unsupervised visitation rights. However, she did not request *899 joint custody of R.T.K., who continued to reside with Stacie and Dean.
In 2006, Dean suddenly died of a heart attack while on a camping trip with Stacie and R.T.K., who was then in the third grade. On the date of Dean's funeral, Heidi showed up unannounced at Stacie's house, and then at the funeral home, angrily demanding that Stacie surrender R.T.K. to her. After several confrontations with family members at both locations, Heidi had to be escorted from the funeral home by police officers.
Stacie filed suit seeking to be appointed as her stepson's managing conservator, either solely or jointly with Heidi. Heidi counterclaimed, seeking modification of the earlier custody order and asking to be named R.T.K.'s sole managing conservator.
The case proceeded to a lengthy bench trial that spanned several months and featured numerous witnesses. At its conclusion, the trial court appointed Stacie sole managing conservator, and Heidi as possessory conservator. In support, the court issued findings of fact and conclusions of law, in which it found, among other things, that appointment of Heidi as a managing conservator would significantly impair R.T.K.'s physical health and emotional development.
Heidi has appealed the trial court's refusal to appoint her as sole managing conservator. In two issues, Heidi contends the trial court abused its discretion because its ruling is not adequately supported by sufficient evidence in the record. Stacie contends that sufficient evidence supports the trial court's determination.
The parties' disagreement regarding sufficiency of the evidence reflects a deeper disagreement about the proper characterization of Stacie's suit seeking appointment as R.T.K.'s managing conservator following Dean's death.
Heidi contends that the evidence is insufficient to support appointment of Stacie as sole managing conservator because Stacie failed to overcome a "parental presumption" contained in section 153.131(a) of the Texas Family Code. Heidi invokes section 153.131 and asserts that Stacie's suit was an original conservatorship proceeding that is subject to the parental presumption. See In re V.L.K., 24 S.W.3d 338, 343 (Tex.2000).
Stacie, in contrast, contends that her suit sought to modify a prior conservatorship determination and was not an original conservatorship proceeding. Stacie thus seeks to cast her suit as a modification action governed by chapter 156 of the Family Code, to which no parental presumption applies. See id.

II.

STANDARD OF REVIEW
Because the trial court is granted broad discretion to decide the best interests of a child in family-law matters, we review its custody order for an abuse of that discretion. See In re A.L.E., 279 S.W.3d 424, 427 (Tex.App.-Houston [14th Dist.] 2009, no pet.); In re Smith, 260 S.W.3d 568, 574 (Tex.App.-Houston [14th Dist.] 2008, orig. proceeding). Generally, a trial court abuses its discretion by acting arbitrarily, unreasonably, or without reference to any guiding rules or principles. See Swaab v. Swaab, 282 S.W.3d 519, 524 (Tex.App.-Houston [14th Dist.] 2008, pet. dism'd w.o.j.).
Under this standard, a challenge to the legal or factual sufficiency of the evidence is not an independent ground of error but may be a relevant consideration in assessing whether the trial court abused its discretion. See Baltzer v. Medina, 240 *900 S.W.3d 469, 475 (Tex.App.-Houston [14th Dist.] 2007, no pet). A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support its decision. See A.L.E., 279 S.W.3d at 428; Baltzer, 240 S.W.3d at 475.

III.

ANALYSIS
Heidi presents two related arguments to challenge the trial court's appointment of Stacie, instead of her, as sole managing conservator. In her first issue, she contends the trial court did not properly give effect to a "parental presumption" contained in section 153.131(a) of the Texas Family Code. That argument also underlies her second issue, in which she claims that, by failing to observe that statutory presumption, the trial court, in effect, violated her constitutional rights as a parent.[1] Both of Heidi's arguments turn on her claim that the trial court was required, but failed, to apply a rebuttable statutory presumption that a child's interests would be best served by appointment of a parent as sole managing conservator. The differences between an original conservatorship suit and a modification action are "more than procedural or semantic." See In re C.A.M.M., 243 S.W.3d 211, 215 (Tex.App.-Houston [14th Dist.] 2007, pet. denied). Each proceeding is governed by a distinct statutory scheme designed to address different policy concerns. See V.L.K., 24 S.W.3d at 343.
The controlling provisions for original custody suits are found in chapter 153 of the Texas Family Code. See id. at 341. That chapter contains, among other things, a "parental presumption" codifying the common-law notion that a child's best interest is usually served by awarding custody to a parent. See id.; Tex. Fam.Code Ann. § 153.131(a) (Vernon 2008). A "modification suit" is governed by a different chapter156of the Family Code. See V.L.K., 24 S.W.3d at 342, 343.
Both chapters share one overriding concern: the best interest of the child. See Tex. Fam.Code Ann. § 153.002 (Vernon 2008) ("The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child.") (emphasis added). However, a modification suit introduces additional policy concerns not present in an original custody action, "such as stability for the child and the need to prevent constant litigation in child custody cases." V.L.K., 24 S.W.3d at 343. Those concerns apparently prompted the Legislature to remove any statutory presumption that would favor a parent over a nonparent in a custody-modification proceeding:
By including the parental presumption in original suits affecting the parent-child relationship but not in suits for modification of conservatorship, the Legislature balanced the rights of the parent and the best interest of the child. On one hand, "the interest of parents in the care, custody, and control of their children" has been described as "perhaps the oldest of the fundamental liberty interests" recognized by the United States Supreme Court. On the other hand, it is the public policy of this State to resolve conservatorship disputes in a manner that provides a safe, stable, and nonviolent environment for the child.
The Legislature has determined that when these two interests compete . . . the child's interest in stability prevails over the parent's right to primary possession. Thus, when statutory requirements *901 are met, the parent's right to primary possession must yield to the child's right to a safe, stable home.
C.A.M.M., 243 S.W.3d at 216 (citations omitted); see V.L.K., 24 S.W.3d at 343 (expressing concern that "a change of custody disrupts the child's living arrangements and the channels of a child's affection").
According to the record, the parties and the trial court agreed that the presumption applied to Stacie's suit seeking her appointment as R.T.K.'s managing conservator. The trial court stated: "I think there is a . . . presumption in this particular case. . . ." Counsel for Stacie and Heidi responded in unison: "Right." On motion for rehearing, Heidi stresses that Stacie expressly consented to try the case under the parental presumption and argues that the evidence is insufficient to overcome this presumption.
We hold the trial court did not abuse its discretion by appointing Stacie as sole managing conservator on this record. This conclusion applies regardless of whether the evidence is assessed in light of section 153.131(a)'s parental presumption or under section 156.101, which imposes no parental presumption. Because both routes lead to the same destination on this record, we need not and do not decide whether (1) Stacie stipulated to an inapplicable standard; or (2) a party could hypothetically waive the child's right to have his best interests decided under the correct legal standard.
Before addressing the evidence supporting that conclusion, however, we pause to note the rather unique deference afforded a trial court's custody determinations, in light of its ability to sense "the forces, powers, and influences that cannot be discerned by merely reading the record":
Custody disputes by their very nature are inherently fact-intensive. Concepts of psychological parenting, bonding, and the depth of attachments to parent-figures must be viewed in the context of the evidence presented. Appellate courts routinely defer to the fact finder at trial concerning matters of credibility and demeanor, but perhaps in no other type of litigation is it more critical. In most instances, the fact finder will not hear from the child the subject of the suit. The child's behavior, experiences, fears, joys, and significant attachments will be conveyed through pictures and through the words of other witnesses, both lay and expert. The individuals vying for conservatorship may be scrutinized by the fact finder for such intangible signs as an animated smile when describing a child's achievements, a furrowed brow when explaining typical affectionate concern, or even tears when anticipating the emotional impact the outcome of litigation will have on a child.
In re De La Pena, 999 S.W.2d 521, 526, 529 (Tex.App.-El Paso 1999, no pet). With those considerations in mind, we turn to the evidence addressing the statutory presumption.

A. The "Parental Presumption" Standard
The relevant portions of the "parental presumption," as codified in the Family Code, provide:
Subject to the prohibition in Section 153.004, unless the court finds that appointment of the parent . . . would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development, a parent shall be appointed sole managing conservator. . . of the child.
Tex. Fam.Code Ann. § 153.131(a). The rationale for this presumption, according to the Texas Supreme Court, is the natural *902 affection that usually flows between parent and child. See V.L.K., 24 S.W.3d at 341.
In her first issue, Heidi contends this statutory presumption may be rebutted only by proof that she possesses some character flaw that currently renders her an "unfit" mother and, by extension, her home an unsuitable place for R.T.K. However, we disagree with her interpretation, which is not supported by the plain statutory language of section 153.131(a).

1. Interpretation of Section 153.131(a)
In construing a statute, our primary purpose is to determine and give effect to the Legislature's intent. See V.L.K., 24 S.W.3d at 343. To the extent possible, we must ascertain that intent from the language used in the statute. See Smith, 260 S.W.3d at 572; Graves v. Mack, 246 S.W.3d 704, 708 (Tex.App.-Houston [14th Dist.] 2007, no pet.). Therefore, if the statutory language is unambiguous, as here, we adopt the interpretation supported by the plain meaning of the words selected by the Legislature. See Smith, 260 S.W.3d at 572.
Section 153.131(a), on its face, does not necessarily require proof of a parent's blameworthy conduct as a prerequisite to appointment of a nonparent as managing conservator. Tex. Fam.Code Ann. § 153.131(a). Instead, the statute plainly addresses only the effect of a parent's appointment on the child, as opposed to the myriad of circumstancessuch as the parent's conductthat might have produced that result. See id.
To that extent, section 153.131(a) may be contrasted with the Family Code provisions governing the termination of parental rights. See Tex. Fam.Code Ann. §§ 161.001-.007 (Vernon 2008 & Supp. 2009). Under chapter 161, a court may order involuntary termination of a parent-child relationship only if there is proof of one or more acts or omissions, most of which, in a general sense, reflect either neglect or inability to care for the child. See id. §§ 161.001(1) (Vernon Supp. 2009), 161.003(a) (Vernon 2008).
That evidentiary requirement, however, is conspicuously absent from section 153.131(a). See id. § 153.131(a). Therefore, we must presume the Legislature did not intend to always require proof of specific acts of wrongdoing by a parent simply to overcome the statutory presumption.[2]See City of Rockwall v. Hughes, 246 S.W.3d 621, 628 (Tex.2008) ("[W]e believe every word excluded from a statute must also be presumed to have been excluded for a purpose.") (citation omitted); Charette v. Fitzgerald, 213 S.W.3d 505, 511 (Tex.App.-Houston [14th Dist.] 2006, no pet.).
To be clear, evidence of a parent's "blameworthy prior behavior," by itself, may be sufficient to overcome the presumption in some cases. See, e.g., In re K.R.P., 80 S.W.3d 669, 677 (Tex.App.-Houston [1st Dist.] 2002, pet. denied) (affirming appointment of nonparent as sole *903 managing conservator, in part, because of evidence of parent's abusive and criminal behavior). However, such proof may not be necessary in all cases if, as here, the record otherwise demonstrates that appointment of the parent would produce "the statutorily required negative effect on the child."[3]In re G.R.W., 191 S.W.3d 896, 900 (Tex.App.-Texarkana 2006, no pet.).
We note several other Texas courts have interpreted section 153.131(a) similarly. See id. Chavez v. Chavez, 148 S.W.3d 449, 458-59 (Tex.App.-El Paso 2004, no pet.); K.R.P., 80 S.W.3d at 677 (noting that "separation of the child from the only person who has consistently cared for her for the majority of her life would `significantly impair' the child's emotional development"); De La Pena, 999 S.W.2d at 529 ("[B]ecause safety, security, and stability are critical to child development, the danger of uprooting a child may in some instances rise to a level that significantly impairs the child's emotional development."); In re Rodriguez, 940 S.W.2d 265, 272-73 (Tex.App.-San Antonio 1997, writ denied) (upholding appointment of nonparents despite absence of any evidence of father's culpability).
In this case, the trial court specifically found, among other things, that appointment of Heidi as sole managing conservator would uproot R.T.K. "from the only home he has known for the last eight years" and significantly impair his emotional development. Because that finding is sufficiently supported by evidence in the record, as shown below, we may not disturb *904 the trial court's judgment. See A.L.E., 279 S.W.3d at 428; Baltzer, 240 S.W.3d at 475.

2. Application to Facts
In her appellate brief, Heidi challenges the sufficiency of all fifty-two Findings of Fact issued by the trial court, including such innocuous findings as, "Petitioner, STACIE KELLY, is the step-mother of the child." As to most of these findings, however, Heidi does not actually suggest the evidence is lacking; instead, she contends these findings, taken as true, are not enough to overcome the statutory presumption. We disagree.
The record contains evidence of a substantive and probative nature supporting the trial court's bottom-line conclusion that "[r]emoving [R.T.K.] from STACIE KELLY's home would significantly impair his emotional development." That was the very opinion offered by multiple witnesses who have spent significant time with R.T.K., including Stacie, Heidi's grandmother, and R.T.K.'s then-current schoolteacher, Melanie Bailey. All three witnesses confirmed that, as a result of the death of his father, R.T.K. has an increased need for stability in his home environment. Further, all of these witnesses testified that the child's stability would be disrupted by removing him from his home and placing him with Heidi.
The record confirms their accounts. For much of R.T.K.'s life, Heidi has been unable or unwilling to provide the stable home environment crucial to his emotional development. She was incarcerated during his very early life, and ceased to have joint custody of him when he was only one year old. She was absent from his life for more than two years, and repeatedly failed to exercise her rights to visit with, much less actively participate in the early life of, her son.
In Heidi's absence, Stacie has provided a steady influence in R.T.K.'s life since she came to live with him in 2001. Over the years, they have bonded. He now refers to Stacie as his "mom," and has repeatedly expressed his desire to live with her, not Heidi. With her help, he has begun to cope with the loss of his father. She arranged for him to receive counseling, and he reportedly has begun to "open up" about his father's death. He enjoys strong support from his community and, according to several witnesses, Stacie has provided a very safe and stable environment for him.
The record suggests Heidi, by contrast, can provide a "fun" environment for her son, but one lacking any real community or family support. Heidi has almost no interaction with several of her son's family members, and has not encouraged him to maintain those relationships. For example, after Heidi's grandmother sided with Stacie during a temporary-orders hearing, Heidi retaliated against her grandmother by denying access to R.T.K. She has not consistently paid child support since Dean's passing and has likewise failed to maintain steady employment.
The record further reflects that, after his father's death, R.T.K. has become reluctant to trust new people or to develop long-lasting relationships. That development prompted his teacher, Ms. Bailey, to express concerns about R.T.K.'s ability to adapt to any new living situation. That concern was not unfounded; when R.T.K. was temporarily placed with Heidi following a habeas corpus hearing in this case, he reacted very badly to the change in living arrangements. He sobbed uncontrollably and was not consoled by Heidi's orders to simply "get over it." Ultimately, Heidi had to ask her grandmother to help settle him down. Heidi's grandmother, *905 however, is no longer allowed at Heidi's house.
The trial court, presented with all of the foregoing evidence, could reasonably conclude that removal of R.T.K. from "the only home he has known" would significantly impair his emotional development. See Rodriguez, 940 S.W.2d at 274. Accordingly, we hold the record sufficiently supports the trial court's conclusion that Stacie presented evidence to rebut the statutory presumption found in section 153.131(a).

B. Evidence Supporting Modification of Previous Custody Order
A review of the evidence under the modification standard leads to the same outcome. A party seeking modification of a previous custody order must prove, in relevant part, that (1) modification would be in the child's best interest, and (2) "the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed" since the previous custody order. Tex. Fam.Code Ann. § 156.101(a) (Vernon Supp. 2009); In re Vogel, 261 S.W.3d 917, 923 (Tex.App.-Houston [14th Dist.] 2008, orig. proceeding); C.A.M.M., 243 S.W.3d at 216. Here, the evidence also sufficiently supports a judgment under this standard.
As to the first element, the evidence highlighted above adequately demonstrates that modification of the earlier custody order, so as to appoint Stacie as sole managing conservator, would be in the child's best interests because it would help promote R.T.K.'s need for stability. See Tex. Fam.Code Ann. § 156.101(a)(1); Vogel, 261 S.W.3d at 925 (upholding award of custody to nonparent, in light of concerns posed by uprooting child from stable environment and placing him with father with (1) a relative lack of stability, (2) an inconsistent history of exercising visitation rights, and (3) an inability to maintain steady employment).
Heidi does not challenge proof of the second modification element, that is, a material and substantial change in circumstances since the previous custody order. See Tex. Fam.Code Ann. § 156.101(a)(1). The trial court specifically found, and the uncontested evidence showed, that Dean, who was his son's sole managing conservator, suddenly died on June 23, 2006. The death of a child's parentand sole managing conservatorrepresents a "material and substantial change" supporting modification of a custody order. See In re P.D.M., 117 S.W.3d 453, 456 n. 1 (Tex. App.-Fort Worth 2003, pet. denied), cited in Vogel, 261 S.W.3d at 923 n. 7.
Accordingly, under either legal standard, the record sufficiently supports the trial court's decision to appoint Stacie, and not Heidi, as sole managing conservator. Therefore, we hold the trial court did not abuse its discretion, and we overrule appellant's first and second issues.

IV.

CONCLUSION
Finding no merit in the issues presented, we affirm the trial court's judgment.
NOTES
[1] Heidi does not raise a separate challenge to the constitutionality of section 153.131(a).
[2] Otherwise, it could be argued that the evidence necessary simply to rebut the presumption might also be sufficient to justify a complete and total termination of the parent-child relationship. See Tex. Fam.Code Ann. § 161.001(1)(E) (authorizing termination of rights as to a parent that "engaged in conduct. . . which endangers the physical or emotional well-being of the child"); see also In re Rodriguez, 940 S.W.2d 265, 273 (Tex.App.-San Antonio 1997, writ denied) (declining to require proof of parent's wrongdoing to overcome presumption because "[t]o do so, we believe, would improperly render [the child's] best interest coterminous with [the father's] fitness to act as a parent and merge the standard for the termination of parental rights with the very different standard for custody determinations").
[3] Our conclusion that proof of Heidi's wrongdoing was not necessary here should not be read as a suggestion that the record was somehow devoid of such evidence. To the contrary, the evidence at trial included several instances of "blameworthy" conduct by Heidi:

 After R.T.K.'s birth, but during her marriage to Dean, Heidi worked as an "escort" for more than eighty men. While she denied sleeping with more than two of her "customers," the trial court could and did infer unfitness from the nature of the occupation and evidence that the vast majority of her appointments took place at motels. See In re G.R.W., 191 S.W.3d 896, 900 (Tex.App.-Texarkana 2006, no pet.) (confirming a parent's "immoral behavior" can overcome the parental presumption); De La Pena, 999 S.W.2d at 528.
 During their marriage, Heidi physically assaulted Dean on at least two occasions following the birth of their son. As a result, she pleaded "guilty" to spousal abuse and served a total of ninety days in jail. Under the Family Code, credible evidence of a history of physical abuse by one parent against the other may be sufficient, by itself, to rebut the parental presumption. See Tex. Fam.Code Ann. §§ 153.004(b) (Vernon Supp. 2009), 153.131(a). In fact, such evidence actually triggers a rebuttable presumption that the abusive parent should not be appointed sole managing conservator. See id. § 153.004(b); Alexander v. Rogers, 247 S.W.3d 757, 762 (Tex.App.-Dallas 2008, no pet.); see also In re R.T.H., 175 S.W.3d 519, 521 (Tex.App.-Fort Worth 2005, no pet.) ("A single act of violence or abuse can constitute a `history' of physical abuse for purposes of section 153.004(b).").
 Heidi had also assaulted Dean's first wife, Kim Kelly, in front of Kim's children, and further threatened to "put [Kim] in the hospital." Despite the remoteness of some of these offenses, appellant's grandmother testified that Heidi still has a bad temper, occasionally loses control, and can be prone to violent outbursts. The record also confirms several recent outbursts by Heidi against her own grandmother, Stacie, and Dean's mother. In addition, during the pendency of this suit, Heidi posted insults about the trial judge on a website and had to be admonished during trial not to mouth threats at her grandmother or flash obscene hand gestures at Stacie. Dean's first wife and Heidi's grandmother both voiced concerns, in light of Heidi's apparently uncontrolled anger problem, about the child's safety and well-being were he to be placed with Heidi.