

# NUMBER 13-20-00282-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE MATTER OF THE MARRIAGE
## OF CHAD COHRS AND CARLA COHRS

**On appeal from the 170th District Court
of McLennan County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Hinojosa and Silva
Memorandum Opinion by Chief Justice Contreras**

This appeal concerns a final decree of divorce and order for conservatorship and child support. Appellant Chad Cohrs, pro se, challenges the decree by four issues. He argues: (1) the trial court "maliciously denied" him a fair hearing; (2) the evidence was insufficient to support the court's family violence finding; (3) the evidence was insufficient to support the decree's restrictions on his relationship with the parties' children; and (4)

the evidence was insufficient to support the decree's disposition of property. We affirm.[1]

## I.    BACKGROUND

### A.    Pre-Trial Proceedings

Chad and appellee Carla Cohrs were married in 2001. Between 2003 and 2015, four children were born of the marriage. In 2018, Chad filed his original petition for divorce, and Carla filed a counterpetition for divorce. On August 3, 2018, the trial court signed agreed temporary orders designating the parties as temporary joint managing conservators of the children and granting Carla the right to designate the children's primary residence within McLennan County. The temporary orders also required Chad to make support payments to Carla of $1,236 per month. Both parties and their attorneys signed the orders. On December 19, 2018, the trial court signed amended temporary orders granting Chad the right to designate the primary residence of the parties' then-fifteen-year-old son within McLennan County. Carla retained the right to designate the primary residence of the other children. The amended temporary orders reduced Chad's monthly support obligation to $950.

Chad filed a "Motion to Compel Discovery and for Sanctions" on February 12, 2019, arguing that Carla had failed to respond to various discovery requests. Chad also moved for a protective order with respect to Carla's discovery requests which "f[e]ll outside the discovery period." On April 23, 2019, Chad filed an amended motion to compel noting that Carla "provided limited documents" but that some of her discovery responses were "deficient."

---

[1] This appeal was transferred from the Tenth Court of Appeals in Waco pursuant to a docket-equalization order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001.

On May 9, 2019, Carla filed a "Motion to Modify Temporary Orders" alleging that Chad "refused to consent to or allow medical treatment" for the parties' son; "refused all psychological counseling and medications to treat the serious mental health emergencies"; and withdrew the parties' son from school without Carla's consent. The motion also alleged that Chad "alienated" the two youngest children by engaging in "verbally abusive behavior during their visits." Carla asked the trial court to "limit or restrict" Chad's visitation with the children.

On May 16, 2019, Chad filed a motion for enforcement listing fifty-five different instances in which he alleged Carla failed to allow him access to the children as required by the temporary orders. Carla filed her own motion for enforcement on June 26, 2019, alleging that Chad unilaterally canceled medical appointments for the children and failed to allow Carla access to the parties' son as required by the temporary orders. Both motions asked for the other party to be jailed for contempt of court.

On June 6, 2019, the trial court signed an order permitting Chad's attorney to withdraw from the case. The order states: "Discovery responses due July 8, 2019" and "The discovery period in this suit ends 30 days before the final trial." Chad represented himself pro se for the remainder of the proceedings.

On July 17, 2019, Carla filed a "Motion to Compel Discovery" alleging that Chad failed to provide "any" responses to her discovery requests.

On September 17, 2019, Chad filed a pro se "Motion to Transfer [sic]" raising several complaints about the trial court judge and asking for the issuance of a writ of habeas corpus "commanding that the children be brought immediately before this Court and that the children be returned to [Chad]." In October of 2019, the presiding judge

3

recused himself and a new judge was assigned to the case. The newly-assigned judge set the case for trial at 9:00 a.m. on December 16, 2019. Chad filed a "Demand for Resetting" contending that the December 16 trial date "conflicts with [his] duties" and that "[t]he reasons are private in nature and not for public release." Trial was then reset for February 24, 2020, at 9:00 a.m.

On February 19, 2020, Chad filed a "Notice of Not Ready to Present" alleging that he "is awaiting the production of material from the repeated requests for discovery to [Carla]"; that he "will still require more discovery once that information has been submitted and evaluated"; and that he did not have "a reasonable opportunity to collect evidence."

On the morning of trial, Chad filed an "Objection to Assignment of Associate Judge [sic] and Objection to Ex Parte Interview of Witness" in which he stated he "learned that a secret meeting is to take place between [Chad's] employer" and the assigned judge. Other than as noted herein, the record contains no written rulings on any of the motions described above.

**B.      Trial**

At trial, Carla was represented by counsel and Chad appeared pro se. Chad's employer, appearing pursuant to a subpoena, produced Chad's W-2 tax form which showed he earned nearly $67,000 in gross income in 2019.

Carla testified that, before she separated from Chad, she was a stay-at-home mom and homeschooled the children, the youngest of which suffers from Down syndrome. She recalled that, on one night in January of 2018, Chad and their son were arguing and "started hitting each other," and Chad then started beating their son with a belt. Carla said she tried to stop Chad by hitting him on the back, but Chad shoved her to the floor.

4

Another time, Chad got into a physical altercation with their son and was talking about "demons and spirits possessing" the child. Carla said Chad believed "the world was going to end as we know it," that "the earth was flat," and that she and their son were "possessed with demons." She said she became concerned with Chad's mental health, but Chad refused to go to counseling. Chad did speak with the family's pastor, but he rejected the pastor's advice and eventually accused the pastor of being possessed by demons.

According to Carla, Chad began sending her rambling letters containing false accusations that Carla had committed incest and sexual abuse against the children and had allowed their son to view pornography. Three of the letters were entered into evidence over Chad's objection. Carla explained that there were times when the children did not attend visits with Chad, but that was because "[t]hey don't want to go." She said the children would hide, argue, cry, and get angry when Chad comes to get them; and when the visits do happen, "[i]t usually doesn't end well" because Chad "badgers" the children about Carla and the divorce proceedings. She said Chad stopped paying child support in July of 2019 and has been "very difficult" about agreeing to have the children attend counseling. Carla said neighbors have called police because Chad was sitting outside of her house "for hours." Chad also threatened to burn everything in their house that "he didn't think [was] Christian," and he once told her that "Christmas is from Satan." She did not believe the children would be safe alone with Chad.

According to Carla, the parties' son became suicidal in September of 2018; she sought treatment for him, but Chad refused to allow him to take medication. Within three weeks of moving in with Chad, their son texted Carla: "Find me some place else to live.

5

Dad's crazy."[2] Another time, their son refused to go with Chad and instead "took off running down the street" in cold weather. Later, the son "terrorize[d]" his sisters with a knife; when Carla tried to call police, the son grabbed her phone and "smashed it." Eventually, with the help of a neighbor, the son calmed down and agreed to go to a mental hospital, but Chad refused to allow the child to take any mental health medication. The son returned to Chad's custody but his behavior worsened, and the child missed school forty-four times between January and March of 2019. Carla made an appointment for their son to see a doctor, but Chad would not allow it.[3] Chad eventually unilaterally withdrew their son from school in order to homeschool him.

Carla testified that, on July 3, 2019, Chad called her and told her that their son "stabbed himself." She said, "he had stabbed himself in the chest after he smoked pot or K2 or something and hallucinated." When she saw the child in the hospital, "the knife was still in his chest, 5 or 6 inches." According to Carla, the child told her that he was alone at the time this happened and he had to call 911 himself. He had emergency surgery and later was admitted to a mental hospital. After the surgery, Carla overheard Chad "telling someone how great [their son] has done" since he had come to live with Chad. The child returned to Carla's custody in September of 2019. She said their son is back in school, recovering from his injury, and receiving treatment for his depression.

After Carla's counsel rested, Chad declined to testify on his own behalf. When the trial court asked Chad whether he would be presenting any evidence at all, he replied: "I

---

[2] Carla said their son could not live with her at that time because he fought with Carla and the other children.

[3] Carla also testified that Chad refused to allow their middle daughter to get treatment for a learning disability, and he refused to acknowledge their younger daughter's Down syndrome diagnosis.

6

have not received any evidence from [Carla's counsel], so no, sir, I cannot do so."

## C. Decree and Post-Decree Motions

The trial court signed a final decree of divorce on March 10, 2020, designating Carla as sole managing conservator, and Chad as possessory conservator, of all four children. The decree grants Carla the exclusive right to designate the primary residence of the children without geographic limitations; allows Chad to have periods of supervised visitation with the children[4]; orders Chad to pay Carla $1,400 per month in child support; and orders Chad to pay $10,000 in Carla's attorney's fees. As to the division of community property, the decree largely awarded to the parties the property that was in their possession, control, or name; however, it awarded Carla the marital residence and associated mortgage, and it stated that Chad was responsible for several community debts including approximately $64,000 in "medical debts for the children."[5]

The decree states: "The Court finds that Chad Cohrs has a history or pattern of committing family violence during the two[-]year period preceding the filing of this suit or during the pendency of this suit." It also states: "IT IS FURTHER ORDERED that if Chad Cohrs submits to a psychological evaluation to be conducted by a psychologist of his choice and provide to the court for review, the Court will consider amending the restrictive visitation terms." Finally, the decree permanently enjoins Chad from, among other things,

---

[4] The decree states that Chad shall have supervised visitation with the youngest daughter for two hours twice per month. As to the other children, the decree states that supervised visitation "shall be at the discretion of [the children] and agreed prior to visitation." The decree specifically notes that Carla "does not have any obligation or duty to physically or by other means require or force [the three older children] to attend a required visit by Chad Cohrs."

[5] Under the decree, if Carla sold the marital residence, Chad's non-medical debt

shall be reduced by an amount equal to one half . . . of the remainder of the amount received by Carla Cohrs after the cost of the sale, expenses incurred in preparing the house for sale, other expenses related to the sale of the home, and all existing mortgage debt on the home is paid.

going within 1,000 feet of Carla's residence or the children's school, or communicating with them "by use of vulgar, profane, obscene, or indecent language or in a coarse or offensive manner, with intent to annoy or alarm [Carla or the children]."

Subsequently, Chad filed a "Motion to Reopen Evidence" alleging that Carla failed to respond to his discovery requests and that the final decree is not "just and fair" because he "did not have the same opportunity to present his case as did [Carla]."[6] Chad also filed

---

[6] Chad's motion included the following "Summary of evidence to be presented":

1. Evidence rebutting [Carla]'s claims for divorce based on cruelty.

2. Evidence of [Carla]'s educational debt paid for exclusively by [Chad] during the marriage.

3. Evidence rebutting [Carla]'s claims to ownership of the homestead.

4. Evidence rebutting courts['] ability to decide best interest of child absent a fitness hearing.

5. Evidence rebutting the amount of attorney fees. The ordered fees support the work of a competent and diligent attorney but considering the performance of [Carla's counsel] the fees seem grossly inflated.

6. Evidence of a contract between the parties regarding of a 50/50 possession and access, finances, and support.

7. Evidence of the courts['] lack of jurisdiction to interfere with the obligation of the contract.

8. Evidence of [Carla]'s cruelty upon [Chad].

9. Evidence of [Carla]'s cruelty upon the . . . children.

10. Evidence supporting [Chad]'s claims that [Carla] is responsible for reimbursing [Chad] for the amount of $95k which was paid with community property he procured while [Carla] was unemployed.

11. Evidence supporting [Chad]'s claims that [Carla] is responsible for damaging the bond between the children and [Chad].

12. Evidence supporting [Chad]'s claims that [Carla] is responsible for interfering with parent-child relationships.

13. Evidence supporting [Chad]'s claims that [Carla] fraudulently induced [Chad] into a marriage so that [Carla] could enjoy the fruits of [Chad]'s labor with intent to abandon the marriage upon completion of the educational debt payment or when her plans were discovered.

14. Evidence supporting [Chad]'s claims that [Carla] is responsible for emotional damage to the children.

15. Evidence supporting [Chad]'s claims that [Carla] is responsible for exemplary damages as a result of her malicious prosecution during the divorce.

16. Evidence supporting [Chad]'s claims that [Carla] is responsible for exemplary damages

a "Motion for Trial De Novo" with a new judge. Chad's post-decree motions were denied by order signed on April 13, 2020, and this appeal followed.[7]

## II. DISCUSSION

### A. Fair Hearing

By his first issue, Chad contends that the trial court "maliciously denied" him a fair hearing. He quotes several provisions of the Texas Code of Judicial Conduct, though he does not explicitly argue that the trial court violated those provisions. *See* TEX. CODE JUD. CONDUCT, Canon 3(B)(5) ("A judge shall perform judicial duties without bias or prejudice."); *id.* Canon 3(B)(6) ("A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice . . . ."); *id.* Canon 3(B)(8) ("A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law."); *id.* Canon 3(B)(9) ("A judge should dispose of all judicial matters promptly, efficiently and fairly."). Chad also cites Texas Rule of Civil Procedure 266, which states generally that "[t]he plaintiff shall have the right to open and conclude both in adducing his evidence and in the argument . . . ." TEX. R. CIV. P. 266. Chad notes that, "for some reason not stated on the record," Carla's counsel was invited to open the argument and call the first witness, despite the fact that Chad initiated the case as petitioner. *See* TEX. R. CIV. P. 265 (providing that "[t]he party upon whom rests

---

as a result of her fraudulent acts.

17. Evidence supporting [Chad]'s claims that [Carla] is responsible for exemplary damages as a result of her intentional spoliation of evidence. . . .

18. Evidence supporting [Chad]'s claims that [Carla] is responsible for exemplary damages as a result of her taking advantage of [Chad]. Mate crime [sic], financial exploitation, theft.

19. Evidence supporting [Chad]'s claims that [Carla] is responsible for exemplary damages as a result of her exploitation of the children.

[7] Carla has not filed a brief to assist us in the resolution of this appeal.

the burden of proof on the whole case" shall open argument and evidence "unless the court should, for good cause stated in the record, otherwise direct").

Chad is correct that he initiated the divorce proceedings as petitioner, but Carla filed a counterpetition for divorce and therefore was also, arguably, a "plaintiff" with the "burden of proof on the whole case." *See* TEX. R. CIV. P. 265, 266. Chad does not cite any authority, and we find none, establishing that a trial court errs by allowing a counter-petitioner to open argument and evidence at trial when both spouses have filed petitions for divorce. *See* TEX. R. APP. P. 38.1(i) (requiring an appellant's brief to contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"); *Wheeler v. Green*, 157 S.W.3d 439, 444 (Tex. 2005) (per curiam) (providing that pro se litigants are held to the same standards as attorneys and must comply with the Texas Rules of Appellate Procedure). Even if the trial court erred by conducting the trial in this manner without making a finding of good cause on the record, Chad did not object when the trial court invited Carla's counsel to argue first, and he ultimately declined to present any evidence on his behalf. *See* TEX. R. APP. P. 33.1(a)(1) ("As a prerequisite to presenting a complaint for appellate review, the record must show that . . . the complaint was made to the trial court by a timely request, objection, or motion . . . ."). Moreover, Chad does not argue, explicitly or implicitly, that the trial court's actions in this regard probably caused the rendition of an improper judgment or probably prevented him from presenting his case to this Court. *See* TEX. R. APP. P. 44.1(a)(1) (standard for reversible error in civil cases).

Under these circumstances, we cannot say the trial court abused its discretion or deprived Chad of a fair hearing. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240

(Tex. 2001) (per curiam) (noting that "the discretion vested in the trial court over the conduct of a trial is great"). Chad's first issue is overruled.

## B. Sufficiency of the Evidence

By his remaining issues, Chad argues the evidence was insufficient to support various findings in the final divorce decree.

### 1. Standard of Review

We review a trial court's decision on conservatorship and visitation under an abuse of discretion standard. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). The trial court's division of the community estate is also reviewed under that standard. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981) ("The trial court has wide discretion in dividing the estate of the parties and that division should be corrected on appeal only when an abuse of discretion has been shown.").

Under the abuse-of-discretion standard, we review the "evidence in a light most favorable to the court's decision and indulge every legal presumption in favor of its judgment." *In re J.I.Z.*, 170 S.W.3d 881, 883 (Tex. App.—Corpus Christi–Edinburg 2005, no pet.). In this context, challenges to the legal or factual sufficiency of the evidence are not separate grounds of error, but instead are relevant factors to consider in assessing whether the trial court abused its discretion. *In re R.T.K.*, 324 S.W.3d 896, 899 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). To determine whether the trial court abused its discretion because the evidence was legally or factually insufficient, "we consider whether the trial court had sufficient information upon which to exercise its discretion and whether it erred in its application of that discretion." *In re M.M.M.*, 307 S.W.3d 846, 849 (Tex. App.—Fort Worth 2010, no pet.); *Gonzalez v. Villarreal*, 251

S.W.3d 763, 774 n.16 (Tex. App.—Corpus Christi–Edinburg 2008, pet. dism'd).

We are mindful that "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *In re P.M.G.*, 405 S.W.3d 406, 410 (Tex. App—Texarkana 2013, no pet.) (quoting *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). Thus, we "defer to the trial court's judgment in matters involving factual resolutions and any credibility determinations that may have affected those resolutions." *Id.*

Where, as here, no findings of fact and conclusions of law are filed, it is "implied that the trial court made all the findings necessary to support its judgment." *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam). A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support its decision. *In re R.T.K.*, 324 S.W.3d at 900.

## 2.     Family Violence

Chad's second issue challenges the family violence finding set forth in the final order. The family code provides that:

> In determining whether to appoint a party as a sole or joint managing conservator, the court shall consider evidence of the intentional use of abusive physical force, or evidence of sexual abuse, by a party directed against the party's spouse, a parent of the child, or any person younger than 18 years of age committed within a two-year period preceding the filing of the suit or during the pendency of the suit.

TEX. FAM. CODE ANN. § 153.004(a). Additionally, "[t]he court shall consider the commission of family violence or sexual abuse in determining whether to deny, restrict, or limit the possession of a child by a parent who is appointed as a possessory conservator." *Id.* § 153.004(b).

12

In his argument as to this issue, Chad lists the exhibits submitted at trial by Carla's counsel, including Chad's tax forms, the children's report cards, school attendance records for the parties' son, photographs of the children, and letters purportedly written by Chad. Chad argues that these items of "physical evidence" do not support the trial court's family violence finding. However, Carla specifically testified that, in January of 2018, Chad got into a fight with their son, beat him with a belt, and shoved Carla to the floor when she came to the child's defense. The trial court, as trier of fact in this case, was entitled to credit Carla's uncontroverted testimony. *See In re P.M.G.*, 405 S.W.3d at 410. Carla's testimony constitutes some evidence "of a substantive and probative character" to support the trial court's family violence findings. *In re R.T.K.*, 324 S.W.3d at 900. Accordingly, the trial court did not abuse its discretion in this regard. Chad's second issue is overruled.

### 3. Restriction on Parent-Child Relationship

Next, Chad's third issue addresses the "restrictions" placed by the decree on his relationship with the children. In particular, he complains of the decree's provisions: (1) requiring his visits with the children to be supervised; (2) allowing the three older children discretion as to visitation; (3) "preventing communication" with the children; (4) "conditioning further visitation" on a psychological evaluation; (5) designating Carla as sole managing conservator; (6) granting Carla the right to designate the residence of the children; and (7) denying him "a 50/50 custody and financial independence order."

In the argument section of his brief pertaining to this issue, Chad does not cite the record or any legal authority. Accordingly, the issue is waived. *See* TEX. R. APP. P. 38.1(i); *Wheeler*, 157 S.W.3d at 444.

13

Even if the issue were adequately briefed, it would lack merit. "The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." TEX. FAM. CODE ANN. § 153.002. The record is replete with evidence establishing that the trial court's orders concerning visitation and access were in the children's best interest. Such evidence included Carla's testimony that: Chad was violent toward the parties' son; the children would get upset when they had to visit with Chad; Chad has expressed delusionary beliefs including that his family members are possessed by demons; Chad "badgers" the children about the divorce case during visits; Chad repeatedly refused to allow the children to receive necessary medical treatment; the parties' son missed forty-four days of school in three months and attempted suicide while in Chad's custody; and Chad unilaterally withdrew their son from school. Chad did not offer any controverting evidence. He emphasizes on appeal that there was no physical or documentary evidence corroborating Carla's testimony, but such evidence was not necessary. Instead, Carla's clear and specific oral testimony constitutes some evidence "of a substantive and probative character" to support the trial court's orders regarding conservatorship and visitation. *See In re R.T.K.*, 324 S.W.3d at 900. No abuse of discretion has been shown.

Chad's third issue is overruled.

### 4. Disposition of Property

Finally, Chad's fourth issue concerns the decree's disposition of the community estate. In a divorce, a trial court divides the parties' community property "in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." TEX. FAM. CODE ANN. § 7.001. The "just and right" standard "may

14

at times lead to a disproportionate division of assets and liabilities of the parties, depending on the circumstances that courts may consider in refusing to divide the marital estate equally." *Schlueter v. Schlueter*, 975 S.W.2d 584, 588 (Tex. 1998); *see Murff*, 615 S.W.2d at 699 (listing nonexclusive factors court may consider in unequally dividing community estate).

In the argument section of his brief concerning this issue, Chad cites a portion of Carla's testimony in which she agreed with her counsel that the amount of community equity in the marital residence is "less than the amount to cover the amount[] of debt that [Chad has] created." Chad argues counsel's question was "argumentative and leading," and he notes that Carla did not produce documentary evidence supporting her claims of medical debt. However, he does not cite any legal authority in support of this issue. *See* TEX. R. APP. P. 38.1(i); *Wheeler*, 157 S.W.3d at 444. Though we construe Chad's brief liberally, we may not perform an independent review of the record and applicable law to determine whether there was error. *See Castro v. Ayala*, 511 S.W.3d 42, 48 (Tex. App.—El Paso 2014, no pet.); *Robertson v. Sw. Bell Yellow Pages, Inc.*, 190 S.W.3d 899, 903 (Tex. App.—Dallas 2006, no pet.); *Plummer v. Reeves*, 93 S.W.3d 930, 931 (Tex. App.—Amarillo 2003, pet. denied) ("[A]s judges, we are to be neutral and unbiased adjudicators of the dispute before us. Our being placed in the position of conducting research to find authority supporting legal propositions uttered by a litigant when the litigant has opted not to search for same runs afoul of that ideal, however. Under that circumstance, we are no longer unbiased, but rather become an advocate for the party."). Accordingly, the issue is overruled as waived.

**C.      Reopening of Evidence**

In the conclusion section of his brief, Chad argues that the trial court abused its discretion by denying his motion to reopen evidence. He cites case law providing, in the context of a criminal prosecution, that "[a] judge should reopen the case if the evidence would materially change the case in the proponent's favor." *Peek v. State*, 106 S.W.3d 72, 79 (Tex. Crim. App. 2003). He argues that, had his motion been granted, he would have introduced evidence that Carla "has a history of moral turpitude" and "is extremely good at deceiving others." Out of an abundance of caution and in our sole discretion, we consider this unenumerated appellate issue.

"When it clearly appears to be necessary to the due administration of justice, the court may permit additional evidence to be offered at any time . . . ." TEX. R. CIV. P. 270. In determining whether to permit additional evidence under this rule, a court should consider whether: (1) the moving party showed due diligence in obtaining the evidence; (2) the proffered evidence is decisive; (3) reception of such evidence will cause undue delay; or (4) granting the motion will cause injustice. *Poag v. Flories*, 317 S.W.3d 820, 828 (Tex. App.—Fort Worth 2010, pet. denied). "The decision to reopen is within the trial court's sound discretion." *Id.*; *Lopez v. Lopez*, 55 S.W.3d 194, 201 (Tex. App.—Corpus Christi–Edinburg 2001, no pet.).

Chad's motion to reopen evidence set forth a litany of legal conclusions which, he asserted, would be supported by the evidence which he intended to introduce should the case be reopened. However, Chad did not specify what those pieces of evidence were. Instead, his motion appears to be based on his allegation that Carla's counsel failed to respond to discovery requests, and it seems to speculate that complete responses to

those requests would have generated evidence to support his listed legal conclusions. Because the motion lacked any specificity, the trial court was well within its discretion to determine that reopening the case would cause undue delay and injustice. *See Poag*, 317 S.W.3d at 828. We overrule this unenumerated issue.

### III. CONCLUSION

The trial court's judgment is affirmed.

DORI CONTRERAS<br>
Chief Justice

Delivered and filed on the
2nd day of December, 2021.